I'reeMAKj J.,
delivered tbe opinion of tbe court:
The original bill was filed in tbis case in 1866, by tbe administrator, as a bill by a trustee to settle up and administer tbe estate of A. M. 0. Taylor, deceased.
To tbis bill D. G. Taylor and other creditors were made parties, tbe said Taylor especially in order to contest certain claims asserted by bim against tbe estate. To tbis bill tbe widow and an infant daughter were mad© parties. Tbe infant answered tbe same by her mother as next friend. Tbis bill alleged a want of sufficient personal assets to pay debts, and that it would be necessary to sell real estate for tbis purpose; also prayed an injunction against suits to be brought by creditors, and required them to come in by fair implication (though it is not definitely stated), present their claims in tbis suit, have an account of all tbe indebtedness of tbe estate, and tbe sam© finally settled. Under tbis bill an order for an account of assets and tbe indebtedness of tbe estate, was made at December special term, 1866, and a further order that publication be made for all creditors of the estate to file their claims with tbe master on or before the first day of March, following. On the sixteenth of March, 1867, tbe clerk and master made a report, showing a large amount of indebtedness that seems to have been presented to bim, in tbe forms of claims against tbe estate, notes, and accounts, etc. At tbis term, on 18 tli of tbe month, it was ordered that tbe complainant be allowed to file an amended bill, and the case be conducted as an insolvent proceeding. Tbis order was based on tbe fact of so large indebtedness shown by the master’s report, which was supposed, as stated, to be correct, though it was not confirmed, and does not appear from tbe record ever to have been confirmed by tbe court. Without tbis, in tbe same decree, all the real estate of tbe intestate in Carter county, was ordered to be sold by tbe clerk and master. Tbe report of tbe clerk and. master was expressly left open, in this decree, to exceptions “on all sides,” to use its *466 own language, so that nothing was determined as to the indebtedness or assets, by what had been done. This amended bill was filed by the administrator 20th of March, 1867. This bill stated that when the original bill was filed, complainant thought the personal estate and a portion of the real estate, would be sufficient to- discharge the debts,- but from the report of the clerk and master’ of the amount of debts, and perhaps other sources, complainant was now satisfied the estate would be insolvent, although it is suggested that the claims reported by the master would be, on investigation, largely reduced in amount. Complainant then proceeded to suggest the insolvency of the estate to the chancellor, and asked that it be administered in the chancery court as such.
The administrator then says that the creditors of the estate were made defendants to the original bill, and most of them had filed their claims in this court, and to that extent are now before the court, and as the parties were numerous, to save expense of process on all of them, he asks that all the defendants to' the original bill, and all the creditors of the estate, be made parties to the amended bill, and publication be made, notifying all "the creditors of the estate, and all defendants to the original bill and this amended bill, of the filing of the same, except as to the ndnor heir, Mary Taylor, who is prayed to be served with process, and a guardian ad litem appointed to defend for her. The bill concludes with a prayer for a general account as to all matters involved in the original bill and this amended bill, and for a sale of all the real estate under the decrees already made, for the satisfaction of debts that may be finally adjudged to be valid, and that the estate be administered as an insolvent estate. No process was issued as to the minor, and no answer was ever put in by any one for her, so that as to this proceeding, she never has been made a party, under the prayer of the bill for this purpose. The widow of intestate died some time in the year 1868, and the minor child 25th of December of *467 that year. Evalina Aiken and a brother of intestate, N. G. Taylor, -are the heirs of the said minor (as seems admitted), and as such the title to her lands descends to them. N. G. Taylor being a party to the suit, nothing need be said on this branch of the case as to him. At September special term of the court, on application suggesting the right of Evalina Aiken, she was allowed to become ai party to the cause, and file an answer, which should be in the nature of a cross-bill, which was done. In this answer she denies that the personal estate will be sufficient to pay the debts of the estate, ánd calls for proof on this subject in the mode pointed out by law. She does not admit the correctness of the claims filed against said estate, and insists that many of them are barred by the statute of limitations, which the administrator should have contested and defeated. She also insists that there is no legal evidence of the insolvency of the estate, and denies that the suggestion made authorized the court to administer the estate as such, no suggestion of insolvency having been made to the clerk of the county court. She also insists in her cross-bill that the sale of the land ordered, which had then been made, was void, and prays it may be so declared. On this statement of facts, we proceed to adjudge such questions as they present, leaving other aspects of the case to be noticed hereafter.
In the first place, it is clear that the original bill and amended bill must be treated as one bill — that is, that the latter incorporated itself into the former, and so far as it was different from it, modified it by the addition of sueh modification, and to- the extent of the new matter added. In this case, probably, only to the extent of stating the insolvency of the estate, and having a new account of the assets and liabilities of the estate;, and a prayer for the sale of the land under the former orders made, so far as such sales had been decreed. It might be admitted that all that had been done properly under the former bill, in pursuance of its purpose, should stand, except so far as the *468 amended bill changed tbis or asked it to be done, and the same ivas assented to by the other parties to the new bill, or by new parties, if properly before the court. But it is clear that as to the sale of the land ordered by the previous ¡decrees, such orders were absolutely void on the face of the proceeding..
Whether as a bill of conformity to settle up> the trusts of an administration, or as a bill to sell land under the act of 1827 [Shannon’s Code, secs. 4000-4003], or as an insolvent bill, there could be no decree for the sale of the land descended without showing the necessity for it, in the case of a bill of conformity to settle the administration in chancery, by first ascertaining the amount of personal assets, and the amount of the debts due, so that it could be clearly seen that the personal estate (the primary fund for this purpose) was insufficient for the purpose, and how much land should be sold to meet the deficiency. The minor, it is true, was party to the original bill, but, being a minor, could make no admission to bind her estate, so that the case had to be made out against her, so far as the land was concerned. This was not only not done, buit the record shows that the report made by the clerk, of 16th of March, is not even assumed to have been correct. As is stated in the amended bill, the amount thus reported will be considerably reduced on investigation.
Farther than this, the report was not confirmed, but it is expressly, by the decree of the court, left open to exceptions “on all sides,” and only stated as ground for allowing the amended bill to be filed.
That it was supposed by the court that most of the amount reported by the clerk will be found to be a valid charge against the estate. After allowing this amended bill to be filed, in the same decree the court proceeds to decree the sale of the lands of the estate in Carter county, and solely on the above state of facts, and the whole question of the amount of the indebtedness left open for future investigation.
*469 These orders are asked to be executed and the land sold, in the amended bill, and the lands were afterwards sold in pursuance of them. The minor, neiver having been made party to this last bill, cannot, in any way, be affected, even if the sale had been made under the new aspect of the bill as presented by the amended bill. The original decree was void for the reasons stated, and there is nothing in the subsequent case to help it as against the minor, or Mrs. Aiken, who represents her, as one of her heirs. As to N. G. Taylor, who is sui juris, and who has made no objection to the sale, being a party to the whole proceeding, and presenting no appeal from this branch of the case, so far as we can see, acquiescing in it, he might be bound, or it might stand -as to his share — that is, we believe one-half the land, provided the purchaser is willing to retain such shares — he not getting the whole purchase, as contracted for.
The case of Gilchrist v. Cannon, 1 Cold. R., 582, does not contravene this view, but on the contrary, sustains it. That was a collateral attack on the validity of a sale, and the court say the fact that the clerk’s report showed only the personal assets in Bedford county, the county of administration, and a deficiency, the intestate being a resident of the State of Arkansas at his death, and did not show no other assets in the state, would not be sufficient ground to set aside the sale, as it abundantly appeared from the whole record that there were no personal assets in any other county in the state.
These sales must be held, at the instance of Mrs. Aiken, void, so far as they affect the interest of the minor, Mary Taylor, one of whose heirs Mrs. Aiken is.
The next question is as to the claim of creditors presented for adjudication, which are excepted to: First, we notice these claims as to the rights of the creditors against the administrator and the personalty which he represents. It is seen that in the amended bill the administrator treats the creditors who had presented their claims as being be *470 fore the court, and so far as -he is concerned, they must be recognized as parties to the suit and to the amended bill; but it is equally clear that their claims are specifically not recognized as being correct against the estate, but it is expressly stated “they will be materially reduced upon exceptions to be talien,” and the right to do this “on all sides,” is expressly reserved by the decree we have referred to. So that the effect of this proceeding was but to admit, so far as the adfninistrator is concerned, that these; creditors were parties to .the suit, and might present and prove their claims as such. This must be so, or else the administrator would, by 'his own pleading, be allowed to mislead the parties and place them in a false position. It appears, in addition to what we have stated, that at March team, 1869, exceptions were sustained to the report of March 16th, 1867, and the account- recommitted to the master. At September term, 1869, the master, under this order, made another report, in which he says complainant, by counsel, waived exceptions to Nos. 4, 6, 8, 11, 13, 14, 15, 16, 17, 18, 19, 21, and 25 of the accounts filed, so he proceeded to report on Nos. 3, 2, 5, 7,10, 12, 20, 22, 23, and 26. We-need not notice these claims in detail. Suffice it to say, that so far as the administrator goes, the claims to which he waived exception, are proved as to him, and he could not except to their allowance. The case must be treated after the filing of the amended bill, so far as the administrator, at least, is concerned, as an insolvent bill, and the creditors parties as such as to him. It is proper to say that under the original bill to administer the trust of the administration, by long settled practice in England, as well as in this country, on the reference to the master to take the account, a creditor coming in to prove his claim, commences by presenting to the master a state of facts; detailing with reasonable certainty, the [character and origin of his claim], which is accompanied by an affidavit that the debt is due and unpaid. By our practice a petition would be the best and most usual practice. *471 Upon this, if the claim is contested, be must them, prove it by' proper testimony for that purpose, no weight being given to tbe affidavit. See Daniell Cb. Pr., 3d Am. Ed., vol. 2, p. 1205-6 et seq. Ey tbe Code, sec. 2363 [Shannon's Code, sec. 4103], for administration of insolvent estates, it is provided: “Tbe suit or proceeding shall be conducted upon equitable principles, as a creditor’s bill against a trustee is conducted, according to tbe rules and principles governing courts of equity.” In accordance to tbe requirements of this section, if it is not waived by tbe parties, tbe creditor must, under an insolvent bill, conform to tbe rules and principles governing courts of equity when be comes in to prove bis claim — that is, must present Ms statement of facts on which Ms claim rests, sworn to, or a petition embodying tbe same thing substantially, as said in construing these statutes, in tbe case of Reid v. Huff, 9 Hum., 363, where it was definitely held that tbe claim of tbe bank could not be allowed when objected -to, because it bad not, being made a party to tbe bill, filed an answer setting forth tbe amount and origin of its claim — and that to support the claim this statement should have been made, and tbe evidences of its claim in support of it, as notes or bills of exchange, which would have been prima facie evidence of tbe debt, subject to contests or any objection that might be made to it, and then, as a matter of - course, it would have to be proven or the objection met. It was further held in that case, that although Huff bad made Mmself party by petition as a creditor, yet be bad introduced no evidence in support of bis claim, it being an account for work, and therefore tbe court refused to take any notice of it for want of proof of tbe debt. This decision is certainly correct, or else we must disregard the plain requirements of the Code that this suit “shall be conducted as a creditor’s bill," according to the rules and principles governing courts of equity,” which we are not at, liberty to do, nor would it be sound policy to do so, as no simple practice could be adopted, and certainly some rule should *472 exist on the subject, and parties having the right to except to allowance of claims, ought to have something presented to them from which they can see the nature and origin of it, that they may investigate it and test its validity. The administrator and the other creditors on the question of selling the real estate, the heirs, have clearly such right, and ought to know what the claim is, for this purpose. This construction of the statute is sustained by all its provisions on the subject. By sec. 2373 [Shannon’s Code, sec. 4113], it is provided that "each of the creditors and others interested in the estate, may have himself madei a party to the proceeding in equity (l) to prove his demand, (2) and have an'account taken thereof, (3) and a decree for whatever he may be entitled to receive.” His being made party on his application, is for the purpose .of proving his claim, and having it allowed on taking the account, in order to a decree for the amount found due. The case of Bead v. Huff distinctly lays down how he shall become a. party — that is, by a petition, and the English practice:, and the ordinary practice of the court of chancery, he is made, at least, a quasi party, by a statement of the facts as to the origin and character of his claim, supported by affidavit that it is due and unpaid. By sec. 2378 [Shannon’s Code, sec. 4118], to save the operation of the statute of limitations, 'the creditor may present his claim to the clerk and master after the bill is filed, as well in vacation as in term time, and apply to become a party to the proceeding. The clerk is to give him a receipt for his claim, which presentation and application, if done within the time allowed by law, prevents the operation of tbe statute. The application to become a party should be entered on the rule docket bv the derk, and the party making it shown to be a party on the same, with the date of the application. He is then a party to prove his claim, and have it allowed in the account, and a decree for the same, when proven.
These provisions of the Code are so plain as not to be misunderstood. When the claimant is in this way made *473 party, be then must file a statement of bis claim, either as under tbe English practice, or a petition under our practice, giving’ its nature and origin, sworn to, with tbe evidences of his debt, as notes or bills, and if contested, must prove the same, for be is only allowed to become a party by tbe words of tbe section to prove bis claim, and is not to be made a party simply by presenting it, and proves it as such party. Tbe evidence supporting tbe claim should be reduced to writing, and filed by tbe clerk with tbe papers in tbe cause.
Now, applying these principles to tbe facts of this case, what is tbe result? There is no exception to tbe claims reported on in September, 1809, by tbe administrator, and these claims would be, so fax as be is concerned, allowed as against tbe personalty in bis bands, be representing this, and being responsible to tbe distributee if be -fails to plead tbe statute of two years in a proper case, or fraudulently admit or pay claims not due. But bow does tbe matter stand- as to tbe infant heir and Evalina Aiken, who stands in her shoes in this case? As to tbe claims reported, or in tbe first report, tbe infant, although a party, could make no admission, nor did her answer attempt any. This report was set aside and tbe whole account recommitted to tbe master, under the amended bill, and the report of 1869 was tbe result. Tbe infant heir was not made party to this proceeding, no process ever having been served on her, nor on Evalina Aiken, who represented -her after her death, so that nothing was done by which she could be bound. So far as tbe minor or Evalina Aiken is concerned, tbe whole case stood open to tbe latter when she was permitted to be made a party, and she could make any legitimate defense to tbe proceeding. She files her answer, in which she does not admit tbe claims of creditors, and calls on them to make them good according to law. This was notice to them to present them in proper form and to prove them. Now, if there is anything well settled by adjudication in Tennessee, it is that even a judgment against tbe admin *474 istrator is not conclusive on the heir when you seek to reach the real estate for the payment of debts (Peck v. Wheaton, M. & Y. (Cooper ed.), top p. 358--60. See, also, cases cited in note to T. & S. Code, 2280; Cooke, 60; 1 Yer., 288; 2 Swan, 160) and the heirs may make all defense which he could have made. M. & Y., 353. In a case like the present, the heir could make the defense by answer or cross-bill, and this she has done. This must be held to be the law as long settled, and is sustained on the plain principle given, by the court in II. & Y., that the administrator, is not the agent of the heir, does not represent him, and cannot bind his estate in the lands. The heir cannot control his action, nor compel him to make defense to claims filed against the estate, and ought not to be bound or concluded by the result of a suit where he is not a party nor represented, and has no right to make defense. This being so, Evalina Aiken had the right to except to the debts reported by the clerk and master in September, 1869, notwithstanding the action of the administrator in admitting, so far as they are tO' affect the real estate in her hands, and tins is the object of the proceeding under said report. This she has done, and we proceed to notice her exceptions. We may state the ground of all the exceptions to be in general terms, that said claims reported by the master are not filed, set up, proven, or prosecuted according to law, and therefore gannot be allowed. We will notice any claims that may not be reached by this exception in the further progress of this opinion. On looking to the record, we may say, generally, the claims are not shown to be filed at all, or any statement made of what they are, or on what based; nor any claimant made party to this proceeding farther than by the prayer of the amended bill on the part of the' administrator. There is no petition filed or statement such as we have indicated. The parties seemed to have appeared before the master in making the last report, and the administrator admitted each claim as he thought proper, and contested such as he chose; but to *475 this proceeding the heir was not party, never having been served, with process, nor was Evalina Aiken, and she cannot be bound by it. Wa have no proof of the correctness of the claims, except the admission of the administrator and report- — even if they are filed by parties before the court, 'and -a statement of facts as to their origin and character made, or petition filed embodying these facts. We have only the report of the clerk and master. This cannot suffice as against the heir, she not being a party to- the proceeding under the amended bill, nor her representative-, Evalina Aiken. We hold, therefore, as to all the claims subject to this exception, they were properly disallowed for these reasons. They cannot be allowed as a basis for a decree against the real estate in the hands of the heir. At the hearing a number of creditors presented petitions in proper form, and then asked to be made parties and prove their claims, thereby admitting by fair application they were not parties before, which was not allowed by the chancellor, and properly. They had years in which to have done this, and having failed to- present their claims or prove them according to law, as we have shown, could not, at this period, be allowed to commence afresh to- do so. [Anyway, this could have] done them no good, as the claims would be barred by the statute of limitations of 1715 [Shannon’s Code, secs. 4014, 4483], in favor of decedents’ estates of seven years, which the heir was entitled to plead. The statute would commence to run from 1st of January, 18 G7, and this application was only made in 187G, amendments even of suits, so far as the statute of limitations is concerned, only taking effect from the time the amendment is made, and not referring back to the commencement of the suit. So far as the administrator is concerned, he has treated them as parties in his amended bill, and under the report of 1869, has recognized -a number of claims, and has not excepted to this report, as to others allowed by the clerk. But this only binds the estate so far as he is concerned, and appropriates the personalty *476 which be represents, but not tbe beir, wbo was, in this case, no party to tbe proceeding. Tbe result is, that all this class of claims must be disallowed, as was done by the special chancellor. "We find tbe chancellor held tbe sale of the land void, and ordered repayment of the purchase money, with an account of rents, with an allowance for permanent improvements so far as they enhance the value of tbe land. We do not think it proper to disturb this decree, as the purchaser has not appealed, and the administrator in the insolvent proceeding, as this has been treated, does not represent any interest in this sale. The creditors, beir, and purchaser are before the court to represent themselves, and as the creditor and N. G. Taylor have acquiesced in this decree, it will stand. The chancellor allowed the claim of Young’s executor on the ground that, by consent decree of 1875, the defendant, Evalina Aiken, had estopped herself from contesting the same. This decree does recognize Young as a party, and consents to his filing additional exception^ to tbe decree, which he could not do except as a party to the suit. "We think this claim was properly allowed by the chancellor, and'for proper amount, as there is no evidence submitted to sustain the exception as to the ■value of gold or silver coin at the time the note fell due, or that they were different from currency. The exception could not prove itself, nor the court take judicial knowledge of the facts. It is proper to state, perhaps more definitely, tire fact that the only proof in the case in support of the claims in master’s report of September, 1869, is his statement and the admission of the administrator, and as we have said, the heir was not bound by this in any way, for, among other reasons, because, not a party to. the proceeding under which this report was made, even if proof had been taken properly to sustain the claims.
We believe this disposes of all the questions raised in this case. A decree will be drawn in accordance with the opinion. The costs of this court will be paid by the creditors appealing. Of the court below, as directed by the *477 chancellor, and the case remanded to he proceeded in, and the administration wound np.